### NORTHERN WYOMING LAND CO. v. BUTLER et al.

(Circuit Court of Appeals, Eighth Circuit.    August 12, 1918.)

#### No. 5057.

1. **VENDOR AND PURCHASER** ⬅140—CONTRACTS—CONSTRUCTION.

  An offer by defendants to purchase lands from plaintiff on certain conditions *held* to obligate plaintiff. which accepted the same, to furnish an abstract showing good merchantable title before defendants should be required to do anything thereunder.

2. **CONTRACTS** ⬅238(2)—WRITTEN CONTRACTS—MODIFICATION.

  A written contract can be modified by another written contract, or by an executed oral agreement made upon a good consideration.

3. **VENDOR AND PURCHASER** ⬅82—CONTRACTS—BREACH.

  In an action by plaintiff, the vendor of lands, based on an accepted written proposal by defendants to purchase certain lands, *held*, that the condition in the proposal as to the furnishing of an abstract by plaintiff showing good merchantable title was not modified by subsequent agreements, so as to warrant recovery by plaintiff which had not furnished the required abstract.

4. **VENDOR AND PURCHASER** ⬅130(8)—CONTRACTS—COMPLIANCE.

  Where the proposal of the purchaser required the vendor to furnish an abstract showing good merchantable title, an abstract showing that the lands were subject to a mortgage, which gave the vendor the privilege of securing the release of the lands involved, *held* not to show a good merchantable title; there being no agreement that the lands would be freed from the mortgage.

  Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action by the Northern Wyoming Land Company, a corporation, against Harry Butler and Viola Butler. Judgment for defendants, and plaintiff brings error. Affirmed.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Irving F. Baxter, of Omaha, Neb. (Alden, Latham & Young, of Chicago, Ill., and Brown, Baxter & Van Dusen, of Omaha, Neb., on the brief), for plaintiff in error.

T. J. Doyle, of Lincoln, Neb. (Matt Miller, of David City, Neb., on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

CARLAND, Circuit Judge. The Land Company, as plaintiff, brought this action against the Butlers as defendants, to recover damages for the breach of a contract for the sale of land. The complaint contained five causes of action. The first cause of action was for money expended in attempting to remove, at defendants' request, certain defects in the so-called Canadian lands which were to be deeded to plaintiff in part payment of the lands agreed to be sold to the defendants. The second cause of action was for money expended by the officers and agents of plaintiff in going to Manitoba to examine the Canadian lands and in going to Bellwood, Neb., to confer with defendants. The third cause of action was for moneys expended in paying the expenses of one Vincent D. Durmoody for trips from Omaha, Neb., to Bellwood, Neb., and to Buffalo, Wyo. The fourth cause of action was for moneys expended in the employment of attorneys to examine defendants' abstract of the Canadian lands. The fifth cause of action alleged a breach of the land contract and resulting damages.

[1] The trial court directed a verdict against the plaintiff on the last four causes of action. One of the reasons for the ruling of the court on the fifth cause of action was that the evidence showed that the plaintiff itself had breached the contract of sale by failing to furnish to defendants an abstract showing a good merchantable title to the lands which the plaintiff had agreed to sell and convey to the defendants. The court ruled, as to causes of action numbered 2, 3, and 4, that they were matters for which the defendants could not be held liable, especially in view of the ruling of the court that plaintiff had breached the contract first. The contract of sale related to certain lands located in Wyoming, and arose out of the acceptance by the plaintiff of an offer made by defendants November 21, 1913, and modified December 23, 1913. The following are material portions of the offer of defendants accepted by the plaintiff:

"Harry Butler and Viola Butler hereby offers and agrees to purchase from the Northern Wyoming Land Company the following described property * * * in Johnson county Wyoming, together with all water rights appertaining thereto, and to pay therefor the sum of $48,000, as follows: Cash on delivery of contract for a deed to the above land; $31,000 balance to be paid in three equal annual payments, in one, two, and three years, at 6 per cent. interest, and to take a contract for a deed, and when there has been 75 per cent. of the purchase price paid, a warranty deed shall be furnished to purchaser by the company. * * * In the event this offer to purchase is not accepted or that the title to said lands cannot be made a good merchantable title, then said sum so paid as earnest money is to be repaid to the said ———. In case of acceptance of this offer *the performance of the terms hereof is conditioned* upon said Northern Wyoming Land Company furnishing an abstract showing a good, merchantable title, and thereafter tendering a warranty deed to the said Harry Butler and Viola Butler at Bellwood, Nebraska, both par-

ties paying all taxes due or delinquent prior to this date. This offer is to remain open until the 28th day of November, A. D. 1913, at 12 o'clock p. m. and acceptance thereof may be made at any time prior to said date and hour by mailing notice thereof to Harry Butler and Viola Butler at Bellwood, Nebraska, or by other personal notification."

The time for the acceptance of defendants' offer was extended to January 31, 1914. January 29, 1914, the plaintiff accepted defendants' offer. One might draw the conclusion from the main brief of counsel for plaintiff that they claimed that the provision of the contract relating to the furnishing of an abstract of title by plaintiff was waived by defendants by their subsequent acts and declarations, but in counsel's brief in reply, it is denied that such is the position of the plaintiff and it is explained that the plaintiff's position is that the contract arising from the offer and acceptance fixed no time when the plaintiff was required to furnish defendants with an abstract showing a good merchantable title, and therefore, plaintiff was only required to furnish the same within a reasonable time before the defendants were entitled to a deed, which would be when 75 per cent. of the purchase price had been paid. This being the situation, it is further contended that it was competent for the parties to fix a new time within which the abstract should be furnished, and that the evidence shows that this was done. It is clear, we think, that on the face of the offer the abstract was to be furnished before the defendants should be required to do anything thereunder. The abstract to be furnished was not merely an abstract of title, or a complete abstract of title, but an abstract showing a good merchantable title. And such an abstract was of great importance to defendants before they should execute a formal land contract for the purchase of the land, as they were required by the offer to pay $17,000 in cash "on delivery of a contract for a deed to the above land."

[2, 3] The written contract could be modified, however, by another written contract or an executed oral agreement made upon good consideration. There is no claim that the contract was modified by written agreement, so we must turn to the evidence to see whether there was an executed oral agreement made between the parties, changing the time when the abstract should be furnished. The plaintiff called as a witness one George C. Belt, who testified that as the agent and employé of the plaintiff, he called upon the defendants at Bellwood, Neb., in May, 1914; that, at this time witness had a contract for a deed with him drawn in accordance with the offer of defendants; that Mr. Butler made some objections to the contract, especially with reference to the language thereof relating to water rights. In reply to these objections, witness said he would take them up with the attorneys of plaintiff and see if they could be removed. The contract presented at the May meeting contained the following language with reference to the abstract:

"It is further understood and agreed, by and between the parties hereto. that the said party of the first part shall at the time of the execution and delivery of the said warranty deed, also deliver or cause to be delivered to the said parties of the second part, or their attorney, within 30 days from

date, a complete merchantable abstract of title to said lands and premises, showing title to said premises to be in the said party of the first part, or the grantor in said warranty deed, free from all liens and incumbrances, but subject to all easements, rights of way, and reservations hereinbefore mentioned, and furnish a complete abstract within 30 days from date."

Witness called again upon defendants the last of June or the first of July, 1914, and had with him a redraft of the proposed contract for a deed. With reference to the abstract, the redrawn contract contained the following provision:

"It is further understood and agreed, by and between the parties hereto, that the said party of the first part is now having prepared through its attorney and the Johnson County Abstract Company of Buffalo, Wyoming, a complete abstract of title to said lands and premises and that as soon as said abstract is finished and printed or typewritten (and if possible within 30 days from the date hereof) the said party of the first part shall deliver to the said parties of the second part or their attorneys a copy of such abstract, showing the fee-simple title to said premises vested in the said party of the first part, and shall at or before the time of the execution and delivery of the said warranty deed cause such copy of said abstract to be continued and brought down to such date and shall thereupon deliver or cause to be delivered to the said parties of the second part, or their attorney, such abstract and continuance thereof, and the said party of the first part does hereby covenant and agree and warrant that such abstract shall and will be a complete merchantable abstract of title to said lands and premises and 'that the same will show title to said premises as of such date to be in the said party of the first part, or the grantor in said warranty deed, free from all liens and encumbrances, but subject to all easements, rights of way, and reservations hereinbefore mentioned."

Mr. Butler told witness at this meeting in June that he was through with the deal. Witness could not give Butler's language in detail. The provisions of the redrawn contract were not discussed. Neither the original contract presented to the Butlers nor the redraft were ever signed or executed by them. Witness was interrogated with reference to the first contract presented to the Butlers and testified as follows:

"The words on page 3, 'within thirty days from date,' pertaining to the time for furnishing an abstract—is that one of the things he objected to? A. That is one of the things he asked, and I think afterwards we put it in down there, to furnish a complete abstract. I think that is the same thing; that we were to furnish that abstract."

The witness was subsequently recalled and asked the following question:

"What, if any, conversation did you have at that time (the meeting in June) with the Butlers with regard to closing the transaction? A. Well, we came out for the purpose of closing it, and they declined to close it. I don't recall just what the conversation was."

Vincent D. Durmoody, a witness called by the plaintiff testified that he was present when Belt presented the first contract to the Butlers. He was then asked the following question:

"What did the Butlers say, if anything, they were willing to do as soon as a corrected contract should be brought to them? A. Mr. Butler said that when they got a corrected contract, and would have a deed from the Northern Wyoming Company, and also an abstract, then they were ready to close up."

Witness met the Butlers again with Belt in June, 1914. The redrawn contract for the deed and abstract was tendered to the Butlers and witness was asked this question:

"What did they say with respect to going on with the deal? A. Mr. Butler told Mr. Belt he would not accept it at all, and he turned the deal down."

Then the following questions were asked and answers given:

"You and Mr. Belt left together, did you? A. Yes. Q. Did you return later on to see them again? A. I would not say. I gave Mr. Butler the abstract and was to return the next day, and I called up from Schuyler that evening and was told by Mr. and Mrs. Butler that they would not accept it at all under any consideration; they would not accept the abstract. The next morning it was mailed, or that afternoon, I believe, it was mailed; mailed from a small town, I think named Edholm, to Omaha, because it was in Omaha the next morning."

The plaintiff introduced in evidence certificates of the Johnson County Abstract Company which were attached to the abstract, which plaintiff furnished the defendants; but the abstract itself was not offered in evidence until later, so there was no evidence at this time that the abstract tendered showed a good merchantable title to the land in controversy. The uncontradicted evidence also showed that the land, at the time plaintiff refused to enter into the land contract, was incumbered by a mortgage in excess of $67,000. This was the state of the evidence when the plaintiff rested, and the defendants moved for a directed verdict. Subsequently the plaintiff was allowed to withdraw its rest and to introduce additional evidence. As bearing upon the question under discussion, the plaintiff introduced the full abstract of title, which showed that the mortgage for $67,000 contained a release provision to the effect that the land which was to be conveyed to the defendants could be released from the mortgage upon payment of $55 per acre; the mortgage covering other lands than those in controversy. The plaintiff also introduced a letter written by Matt Miller, dated March 11, 1914, in which certain objections were made to the abstract furnished by the plaintiff, but no mention was made of the particular mortgage now in question. Plaintiff also recalled for the fourth time the witness Belt. The witness testified that at the meeting in May between himself and the Butlers there was a discussion about a mortgage existing upon the Wyoming land. The mortgage was spoken of in going over the contract, and the witness explained to the Butlers the partial release clause in the mortgage, and he made a memorandum at the time. The witness was then asked the question,

"What did Mr. Butler say about that matter? A. Well, that was our final conference; this is the way I thought, that it was perfectly satisfactory and I made this minute here. Q. Not the way you thought, but what you said. We do not want what you thought. What did Mr. Butler say, after you explained to him about that mortgage and the release clause in it? A. It was satisfactory. Q. Did you at the time correct that paragraph in accordance with what you and Mr. Butler had said at that time? A. Yes; the corrections are here. Q. And you made those corrections right there in Mr. Butler's presence? A. Yes. Q. And Mrs. Butler's? A. Yes. Q. And, as corrected, was the paragraph read to them? A. They were right there. I do not know as I read it aloud but they saw the corrections after they were made. Q. After

the corrections were made, did they raise any objection to it? Did they raise any objection to the first contract after all these corrections were made by you, after having gone over the matter with them? A. No."

On cross-examination, the witness was asked:

"Now, what was Mr. Butler's specific objection to Exhibit I (the first contract) on page 3, the part that pertains to the abstract? A. Well, the specific objection was that we were not to furnish him an abstract according to this thing, the abstract itself, until 75 per cent. was paid, until we furnished the warranty deed there, and we agreed here to furnish it right away."

We understand the effect of the testimony of Belt as thus detailed to be that the original or first contract that he presented to 'the Butlers provided that the abstract should not be furnished until the time of the delivery of the warranty deed; that the Butlers made objection to this and the contract was changed, so as to provide that the abstract should be delivered within 30 days from the date of the contract. The provision of the first contract in relation to the abstract as heretofore quoted is unintelligible when standing alone, but, taken in connection with the evidence of Belt, it appears that the language of the excerpt referred to was caused by the request of the Butlers that the 30-day clause should be added. The second contract, however, in that portion of the same heretofore quoted as referring to the matter of the abstract, is a clear departure from the corresponding clause in the first contract, and the fact that Belt, as the agent of the company, presented the second contract to the Butlers for signature shows conclusively that, even if it be conceded that the Butlers requested the addition of the 30-day clause to the first contract, this was never agreed to by the company, because, when the contract was redrafted, an entirely different provision was inserted therein. So the claim that the minds of the parties met as to what should be done concerning the abstract wholly fails. The Butlers wanted one thing and the company another. The Butlers objected to the first contract on other grounds than that of the abstract, and there is no evidence that they ever agreed to the provisions in regard to the abstract as it stood in the second contract. It results from this state of the case that the language of the original offer must stand, and determine the rights of the parties, and, as we have said before, the offer required that the abstract should be furnished before the Butlers should be required to do anything thereunder. In reaching the conclusion that we have, we have not considered the question whether the written offer of the Butlers could be modified by evidence of a subsequent oral contract upon which neither party had acted.

[4] We are further of the opinion that the abstract which the evidence shows was furnished by the plaintiff to the defendants did not show a merchantable title to the land in controversy. There was a mortgage upon the land in controversy for over $67,000. The mortgage, it is true, covered other lands, and there was a clause therein that the plaintiff might have released from the lien of the mortgage certain lands, which we understand included those in controversy, upon the payment by the company to the mortgagee of the sum of $55 per acre. This was a privilege that the plaintiff could exercise or not, as

it might choose, and there is no evidence of any agreement between the plaintiff and the defendants that the cash part of the purchase price of the lands in controversy should be used to release them from the mortgage, nor is there any agreement that the plaintiff agreed to do so. Cases are cited by counsel for plaintiff to the effect that a mortgage on the estate of a vendor of land will not justify the purchaser in refusing to accept the deed and enable him to recover back the part of the purchase money already paid if the vendor at the time is able and willing to have the mortgage discharged. No fault can be found with such decisions, but each case must stand upon its own facts. In this case the plaintiff agreed to furnish an abstract showing a merchantable title before the defendant should do anything, and it was incumbent upon the plaintiff to allege and prove that it had substantially performed its part of the contract. And in this case, although it alleged it had performed the contract on its part, it clearly failed in its proof in respect to the matter under discussion.

The judgment below should therefore be affirmed; and it is so ordered.

SANBORN, Circuit Judge (dissenting). My understanding of Mr. Belt's uncontradicted testimony in this case is that at the May meeting between him and Mr. Butler he told Mr. Butler that the $67,000 mortgage, which they both knew was upon the title to the Wyoming land and other lands, contained a provision in it to the effect that the mortgagee would release the land described in the contract upon payment of $55 an acre; that he then proposed to Mr. Butler that the $67,000 mortgage should remain on the land until the time for the delivery of the warranty deed, when the company should furnish an abstract of title showing a perfect merchantable title free from that mortgage, and that meanwhile, and within 30 days from the date of this May conference, it should furnish an abstract of title showing a perfect merchantable title with the exception of the $67,000 mortgage; that Mr. Butler accepted this offer, and declared that arrangement satisfactory, and that within 30 days from that date the company did furnish the latter abstract, but Mr. Butler absolutely refused to perform the contract. Here, as it seems to me, was substantial evidence that the first breach of the contract was committed by Mr. Butler, and not by the company and for that reason I am unable to resist the conclusion that this evidence and the question which party committed the first breach should have been submitted to the jury, and that the court was in error in refusing to do so.